UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| MARY BETH CHAUVIN | CIVIL ACTION |
|---|---|
| VERSUS | NO. 19-10493 |
| SYMETRA LIFE INSURANCE COMPANY | SECTION "L" (2) |

## ORDER & REASONS

Pending before the Court are Defendant's Motion to Dismiss and Motion for Summary Judgement. R. Docs. 16, 17. Each motion is opposed, R. Docs. 23, 24, and Defendant has filed replies, R. Docs. 29, 31. Because the motions are interrelated, the Court rules on them collectively as follows.

I. **BACKGROUND**

Plaintiff Mary Beth Chauvin filed this action against Defendant Symetra Life Insurance Company ("Symetra") challenging its denial of short and long term disability benefits under the Employee Retirement Income Security Act ("ERISA").[1] R. Doc. 9-2. Plaintiff alleges that through her employment with the Terrebone Parish School Board ("School Board"), she was a fully vested participant of an employee welfare plan administered by Defendant. R. Doc. 9-2 at 3.

Plaintiff has been disabled since December 2016 as a result of fibromyalgia, diabetes, anxiety, and depression. R. Doc. 9-2 at 3. According to Plaintiff, her treating physicians have certified

---

[1] Plaintiff filed her complaint on May 16, 2019. On September 12, 2019, she moved for leave to file a first amended complaint in compliance with the Court's scheduling order. R. Doc. 9. Plaintiff's amended complaint clarifies her allegations and includes state law claims for violations of Louisiana Revised Statute section 22:1821 and breach of contract. R. Doc. 9-2.

that she is unable to work due to her disability, and the School Board considers her medically disabled. R. Doc. 9-2 at 3.

Although the complaint does not specify the timing of the events, it appears as though Plaintiff submitted claims after the onset of her disability, which were denied by Defendant. *See* R. Doc. 9-2 at 3. Plaintiff alleges Defendant denied them without providing a full and fair review. R. Doc. 9-2 at 3. In particular, Plaintiff alleges Defendant failed to consider that continuing to work would exacerbate her disability and jeopardize her health. R. Doc. 9-2 at 3. Plaintiff further submits that, in denying her claims, Defendant was motivated by a financial conflict of interest. R. Doc. 9-2 at 4. Having appealed the denials of both her short and long term disability claims and thus exhausted her administrative remedies, Plaintiff now seeks enforcement of the policies and reasonable attorney fees under ERISA. R. Doc. 9-2 at 4-5. Plaintiff further seeks damages and attorney fees for Defendant's failure to timely pay benefits pursuant to Louisiana Revised Statute section 22:1821,[2] and for unpaid benefits, consequential damages, and attorney fees for breach of contract. R. Doc. 9-2 at 6.

Defendant timely answered the first amended complaint, admitting it issued and administered a disability policy to the School Board and denied Plaintiff's claims because it determined she was not disabled under the terms of the policy, but generally denying the other allegations. R. Doc. 10-2. In its defense, Defendant argues that because the School Board is a governmental entity, the disability plans are not governed by ERISA. R. Doc. 10-2 at 8. Defendant also contends it had just cause to deny Plaintiff's claims for both short and long term disability benefits. R. Doc. 10-2 at 8. In particular, Defendant alleges Plaintiff failed to provide written notice

---

[2] Louisiana Revised Statute section 22:1821 requires insurance companies to pay rightful claims within 30 days of receiving notice of the claim and allows a claimant to recover twice the amount of benefits due under the policy as well as attorney fees in the event of failure to timely pay.

2

and proof of claims as required by the policies. R. Doc. 10-2 at 8. Defendant argues that even if the Court finds the plan is governed by ERISA, its "claims decisions were not arbitrary or an abuse of discretion," and that Plaintiff's state law claims are preempted by ERISA. R. Doc. 10-2 at 9. Defendant seeks attorney fees and costs related to the defense of this action. R. Doc. 10-2 at 9.

## II. LAW & ANALYSIS

### A. Defendant' Motion to Dismiss (R. Doc. 17)

Defendant filed a motion to dismiss for lack of subject matter jurisdiction. R. Doc. 17. Defendant argues that federal question jurisdiction is lacking because the disability policy at issue is not subject to ERISA, and that diversity jurisdiction is lacking because the terms of the policies expressly limit Plaintiff's potential recovery to an amount that cannot exceeded $75,000.[3] R. Doc. 17-1.

In opposition, Plaintiff focuses only on diversity jurisdiction and objects to Defendant's method of calculating the amount in controversy. R. Doc. 24. Plaintiff provides her own calculation methodology and explains why the amount in controversy is greater than the jurisdictional minimum.[4] R. Doc. 24. Further, Plaintiff urges this Court to exercise supplemental jurisdiction over her state law claims in the event the Court dismisses the ERISA claim and finds that diversity jurisdiction is lacking. R. Doc. 24 at 6.

---

[3] Defendant considers the amount owed to Plaintiff under both the short and long-term disability policies to be, at most, $6,132.86. R. Doc. 17-1 at 17. Further, Defendant contends that Plaintiff's claim for penalties and attorney fees under Louisiana Revised Statute section 22:1821 would, at most, increase the amount in controversy to $16,354.29. R. Doc. 17 at 17. Defendant contends Plaintiff has stated no additional claims that would increase the amount in controversy to the requisite $75,000. R. Doc. 17 at 17.

[4] Plaintiff believes she is entitled to a minimum of twenty-six months of benefits for a total of $31,084.34 without any offset for other sources of retirement income. Considering the penalty provided in Louisiana Revised Statute section 22:1821, the amount in controversy would involve $62,168.60. R. Doc. 24 at 4. Lastly, Plaintiff does not provide a specific figure for recoverable attorney fees but notes that the Court may consider "time spent by a prevailing party's attorneys on a case, as opposed to a percentage of any award." R. Doc. 24 at 5.

**1. Legal Standard – 12(b)(1)**

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Parties "may neither consent to nor waive federal subject matter jurisdiction." *Simon v. Wal-Mart Stores, Inc.*, 193 F.3d 848, 850 (5th Cir. 1999). Accordingly, "[a] case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998).

Federal Rule of Civil Procedure 12(b)(1) governs challenges to a district court's subject matter jurisdiction. Although "[t]he standard of review applicable to motions to dismiss under Rule 12(b)(1) is similar to that applicable to motions to dismiss under Rule 12(b)(6)," a 12(b)(1) motion can consist of either a facial attack on the pleadings or a broader, factual attack that examines matters outside the pleadings. *Williams v. Wynne*, 533 F.3d 360, 364-65 n. 2 (5th Cir. 2008). When a defendant makes a factual attack, "the district court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009). Accordingly, "[l]ack of subject matter jurisdiction may be found in any of one of three instances: (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Id.*

### 2. Federal Question Jurisdiction

Whether an employee benefit plan is governed by ERISA involves the merits of a plaintiff's claim, not a court's subject matter jurisdiction. *See Smith v. Reg'l Transit Auth.*, 756 F.3d 340, 344 (5th Cir. 2014). "A federal district court has jurisdiction to decide whether or not a plan is an ERISA plan" unless, of course, Plaintiff's claim is "so insubstantial [or] implausible . . . as not to involve a federal controversy." *Id.* (quoting *ACS Recovery Servs., Inc. v. Griffin*, 723 F.3d 518, 523 (5th Cir. 2013)). Plaintiff's claims clearly involve that denial of benefits under employee welfare plans. R. Doc. 12. Consequently, this Court has federal question jurisdiction over Plaintiff's ERISA claim at least insofar as to allow the Court to consider whether Plaintiff states a plausible claim for relief under the federal statute. The Court determines whether Plaintiff has done so momentarily, when it considers Defendant's motion for summary judgment.

### 3. Diversity Jurisdiction

Federal courts have original jurisdiction over matters involving state law claims when the parties are completely diverse and when the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). Complete diversity exists when no plaintiff shares a state of citizenship with any defendant. *McLaughlin v. Mississippi Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004). Here, it is undisputed that complete diversity exists, as Plaintiff is a citizen of Louisiana and Defendant is a citizen of Washington state. R. Doc. 23 at 2. Nevertheless, Defendant argues that this Court lacks subject matter jurisdiction because the amount in controversy does not exceed $75,000. R. Doc. 17-1 at 12-19.

In general, a plaintiff's good faith assertion that the amount in controversy exceeds $75,000 sufficiently invokes diversity jurisdiction. *St. Paul Reinsurance*, 134 F.3d 1250, 1253 (5th Cir. 1998). However, a federal court must decline jurisdiction if it "appear[s] to a legal certainty

that the claim is really for less than the jurisdictional amount." *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1409 (5th Cir. 1995) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)). Further, "when a complaint does not allege a specific amount of damages, the party invoking federal jurisdiction must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional amount." *St. Paul Reinsurance*, 134 F.3d at 1253 (citing *Allen v. R & H Oil & Gas Co.*, 63 F.3d 1326, 1335 (5th Cir. 1995)). Accordingly, if it is not facially apparent that the claims exceed $75,000, a court may consider "'summary judgment-type' evidence to ascertain the amount in controversy." *Id.* In the present case, Plaintiff seeks to recover benefits payable under short and long term disability policies for the duration of her working life but has not alleged a specific amount of damages. Thus, the Court must determine whether Plaintiff has pled factual allegations or otherwise demonstrated that the amount in controversy more likely than not exceeds $75,000.

The parties disagree about how the amount in controversy should be calculated for purposes of this jurisdictional analysis. In particular, they dispute when benefits under the policies would have been due,[5] the impact of a monthly payment Plaintiff receives from the Teacher's Retirement System of Louisiana ("TRSL"),[6] and the potential value of attorney fees.[7]

---

[5] Defendant believes the first payment would have been due on May 20, 2017 because the short term policy's elimination period expired upon the end of a participant's salary continuation and Plaintiff received her salary until May 19, 2017. R. Doc. 17-1 at 1. Without contesting Defendant's description of the elimination period or providing a rationale for her own calculation, Plaintiff contends that short-term benefits were owed from December 2016 to February 2016. R. Doc. 24 at 4. Additionally, Defendant argues that the elimination period for the long term policy expired on August 4, 2017. Plaintiff believes LTD payments were due in March 2017. R. Doc. 24 at 4.

[6] The parties dispute the impact of a payment Plaintiff receives from the TRSL on the amount allegedly owed under the policies. Defendant believes that the amount in controversy should reflect an offset for other disability benefits Plaintiff already receives. R. Doc. 17-1 at 15. Plaintiff argues that an offset is inappropriate because offset "is an affirmative defense that must be pled and proven." R. Doc. 24 at 3 (citing *Hyatt v. Mutual of Omaha Ins. Co.*, 14-282, p. 14 (La. App. 3 Cir. 10/1/14), 149 So. 3d 406, 415.

[7] The parties also disagree as to the value of attorney fees. Defendant's calculation involves "a standard contingency of one-third," while Plaintiff appears to urge this Court to consider, at least for jurisdictional purposes, an award of "statutory fees based on time spent by a prevailing party's attorneys on a case, as opposed to a percentage

In this type of case, where the extent of insurance benefits is at issue, federal courts "generally look to the time at which the action commenced" to determine whether subject matter jurisdiction exists. *Honeywell Int'l, Inc. v. Phillips Petroleum Co.*, 415 F.3d 429, 431-32 (5th Cir. 2005). Where, as here, the dispute involves not the validity of the insurance contract but the extent of the insurer's obligation, future payments are not considered when determining the amount in controversy for jurisdictional purposes. *See Jones v. Bockstruck*, No. CIV.A. 07-0565, 2007 WL 1836652, at *2 (W.D. La. June 27, 2007); *see also Shoemaker v. Sentry Life Ins. Co.*, 484 F. Supp. 2d 1057, 1058 (D. Ariz. 2007) (collecting cases). This "arcanum of federal jurisdiction," *Shoemaker*, 484 F. Supp. 2d at 1058, applies "even though the judgement will be determinative of the company's liability for future installments." 14AA Wright & Miller, Fed. Prac. & Proc. Juris. § 3710 (4th ed.). The rationale for this rule is that the amount in controversy depends on the value of the claim at the moment an action commences. Since the payment of future benefits is inherently speculative, the value of future benefits does not influence the value of the claim at the time the lawsuit begins. As another district court explained, "The claimant's health or other factors could change in the future and result in the company (1) later paying the benefits voluntarily or (2) being admittedly justified in not paying benefits. A judgment based on the claim for amounts due . . . is not res judicata as to liability under the policy in the future, which hinges on unpredictable facts." *Jones*, 2007 WL 1836652, at *2. Accordingly, jurisdiction is dependent on the value of payments allegedly owed to Plaintiff between the onset of her disability and the filing of this suit on May 16, 2019.

---

of any award." R. Docs. 17-1 at 17, 24 at 5. Plaintiff claims that in this case, "time spent could be substantial," but does not provide the Court with any further information from which to discern the appropriate valuation of potential attorney fees from Plaintiff's perspective. R. Doc. 24 at 5.

Further, Plaintiff's potential recovery is expressly limited by the terms of both the short and long term disability policies. Under the short term policy, a participant's weekly payment is determined by multiplying the participant's pre-disability earnings by the benefit percentage and subtracting from that figure "any other income amounts." R. Doc. 17-5 at 36, 38. The long-term policy's procedure for calculating benefits is identical, but payments are calculated in monthly, not weekly terms. R. Doc. 17-7 at 40. The parties appear to agree that Ms. Chauvin's salary in the months preceding her disability was $1,999.25 per month.

Both policies entitle a qualified participant to receive sixty percent of their salary with a reduction for "any other income amounts." R. Doc. 17-5 at 36, 38. The policy defines "other income" to include any income a participant receives under "any governmental retirement system as a result of [the participant's] job with the employer." R. Doc. 17-5 at 28, 36. It is undisputed that Plaintiff receives supplemental benefits from the TRSL. R. Docs. 17-1 at 7, 17-8 at 8, 24 at 3. The parties dispute whether, and to what extent, this payment reduces the value of Plaintiff's claim for purposes of calculating the amount in controversy. Defendant argues that the full value of her monthly TRSL benefits, in the amount of $931, should be reduced from the value of her disability claim. R. Doc. 17-1 at 16. Plaintiff takes the position that an offset is inapplicable, or alternatively, that only a portion of these benefits should be used in this calculation. R. Doc. 24 at 3. Plaintiff argues that the TRSL benefits cannot be considered when determining the amount in controversy because "offset under a long-term disability policy is an affirmative defense that must be pled and proven." R. Doc. 24 at 3 (citing *Hyatt v. Mutual of Omaha Ins. Co.*, 14-282, p. 14 (La. App. 3 Cir. 10/1/14), 149 So. 3d 406, 415).

The Court recognizes that in the Fifth Circuit, affirmative defenses generally may not be used to affect the amount in controversy. *See Mintzer v. Lester*, 51 F. App'x 929 (5th Cir. 2002).

Plaintiff is correct in suggesting that at least one Louisiana state court has found that an offset to a disability policy was an affirmative defense. *See Hyatt*, 14-282 at p. 14, 149 So. 3d at 415. *Hyatt*, however, involved the effect of failure to plead an affirmative defense at trial, not the amount in controversy. Further, and more importantly, the Court is simply not persuaded by the state court's logic that "offset . . . is an affirmative defense because it reduces the full coverage [Plaintiff] is entitled to under the policy." *Id.* at p. 15, 149 So. 3d at 416. In the instant case, the "full coverage" to which Plaintiff may be entitled is explicitly limited by the policy's benefit calculation structure, which mandates that benefits reflect any sum received by the participant from "any governmental retirement system as a result of of [the participant's] job with the employer," such as the TRSL benefits. Plaintiff has offered no proof, nor attempted to substantively argue, that Plaintiff's disability claim is not subject to an offset for the TRSL benefits she receives.

Having concluded that an offset for the TRSL benefits is appropriate for purposes of calculating the amount in controversy, the Court turns to the value of said offset. The parties disagree as to whether the reduction should involve the total retirement benefit or only the "net benefit," as the majority of the TRSL income goes to federal tax withholding and other insurance costs. However, the Court declines to reach the merits of the issue because using the net amount does not affect the ultimate outcome. It is undisputed that Plaintiff receives $943 per month from TRSL, but after paying for health care and taxes, Plaintiff receives a check for $291.18, the "net" amount. R. Docs. 17-4 at 1, 17-1 at 16, 19. Accordingly, Plaintiff stands to recover roughly $908.37 per month under both policies.[8]

Although both policies are subject to elimination periods, the Court assumes Plaintiff was entitled to seek benefits for twenty-nine months, from the onset of her disability in December 2016

---

[8] Plaintiff was making $1,999.25 per month. Sixty percent of $1999.25 is $1199.55. $1199.55 minus $291.18 is $908.37.

through the commencement of this suit in May 2019, because even this generous calculation does not change the ultimate outcome. Accordingly, the value of Plaintiff's claim for overdue benefits is $26,342.73.[9]

In addition to seeking overdue benefits, Ms. Chauvin brings a claim under Louisiana Revised Statute section 22:1821, which allows a plaintiff to recover "double the amount of the health and accident benefits due under the terms of [an insurance] policy or contract during the period of delay" as well as attorney fees when an insurer fails to make timely payments. La. R.S. 22:1821. The amount in controversy depends on all these forms of relief. *See, e.g., St. Paul Reinsurance*, 134 F.3d at 1253 ("[I]n addition to policy limits and potential attorney's fees, items to be considered in ascertaining the amount in controversy when the insurer could be liable for those sums under state law are inter alia penalties, statutory damages, and punitive damages—just not interest or costs."). Accordingly, Plaintiff could potentially recover twice the value of her benefits claim, or $52,685.46, in addition to attorney fees. Assuming a standard contingency arrangement of one-third a total award, the amount in controversy involves $70,247.28. Because the amount in controversy involves less than $75,000, this Court does not have subject matter jurisdiction over Plaintiff's state law claims.

## B. Defendant's Motion for Summary Judgement (R. Doc. 16)

Plaintiff's complaint also includes a claim for relief under ERISA. Defendant filed a motion for summary judgement on the issue, contending that ERISA does not apply because the disability plans are "governmental plan[s]," which are expressly excluded from ERISA's scope. R. Doc. 16 at 5.

---

[9] $908.37 multiplied by twenty-nine months equals $26,342.73.

In opposition, Plaintiff argues the plans are subject to ERISA because the School Board did not "establish" the plans in the manner required for the governmental plan exception to apply. R. Doc. 23. To support this contention, Plaintiff explains that although the School Board applied for and endorsed the plans, she purchased the policy though an independent insurance agent, participation was entirely voluntary, and the plan was funded exclusively by payroll deductions. R. Doc. 23 at 5. Plaintiff additionally explains that her "only interest in opposing defendant's motion for summary judgement is to ensure the correct law is applied" because the matter involves "unique facts for the Court to consider." R. Doc. 23 at 6.

**1. Legal Standard – Rule 56**

As explained above, the applicability of ERISA implicates a claim's merits, not a court's jurisdiction. *See Smith,* 756 F.3d at 344. Because federal courts have "jurisdiction to decide whether or not a plan is an ERISA plan," ERISA's applicability is a question to be decided pursuant to a motion to dismiss for failure to state a claim under Rule 12(b)(6) or, if factual information outside of the pleadings is needed, Rule 56. *Id.* at 346-47 (quoting *ACS Recovery Servs., Inc. v. Griffin*, 723 F.3d 518, 523 (5th Cir. 2013)). The instant motion is treated as a motion for summary judgement because the pleadings alone are insufficient to determine whether this policy is governed by ERISA.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which the party will bear the burden of proof at trial." *Id.* A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id.* at 323. If the moving party meets that burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324.

A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996). "[U]nsubstantiated assertions," "conclusory allegations," and merely colorable factual bases are insufficient to defeat a motion for summary judgment. *See Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Anderson*, 477 U.S. at 249–50. In ruling on a summary judgment motion, a court may not resolve credibility issues or weigh evidence. *See Int'l Shortstop, Inc. v. Rally's Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991). Furthermore, a court must assess the evidence, review the facts and draw any appropriate inferences based on the evidence in the light most favorable to the party opposing summary judgment. *See Daniels v. City of Arlington*, 246 F.3d 500, 502 (5th Cir. 2001); *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986).

2. **Discussion**

Defendant argues that summary judgment with respect to Plaintiff's ERISA claim is appropriate because Plaintiff cannot prove an essential element of her claim—namely, that the disability policies under which she seeks benefits are governed by ERISA. R. Doc. 16-1 at 4. Defendant contends that the policies are not subject to ERISA because they are "governmental plan[s]." R. Doc. 16-1 at 8.

ERISA is a comprehensive statute that broadly and uniformly regulates employee benefit plans. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004). Although the statute's scope is sweeping, certain plans are exempt from ERISA's coverage. *See* 29 U.S.C. § 1003(b). An employee benefit plan is exempt if it qualifies as a "governmental plan." *Id.* Title I of ERISA defines a "governmental plan" as "a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." *Id.* §§ 1002(32). The Fifth Circuit has held that because "the language [of the statute] is clearly disjunctive," a plan is not subject to ERISA when it is either established *or* maintained by an entity satisfying the statutory definition. *Hightower v. Texas Hosp. Ass'n*, 65 F.3d 443, 450 (5th Cir. 1995). It is undisputed that the School Board is a political subdivision for the purposes of ERISA. R. Docs. 16-1 at 4, 23 at 1. The critical inquiry is, therefore, whether the policies under which plaintiff seeks benefits were "established or maintained" by the School Board.

Although the Fifth Circuit not has explained precisely how a plan is "established" by a governmental entity, a review of the case law suggests a broad interpretation is warranted. *See Hightower*, 65 F.3d at 446 (noting that a plan was "established" by a public hospital when it contracted with an insurance company to provide a plan "for the benefit of the employees"); *see also Rose v. Long Island R.R. Pension Plan*, 828 F.2d 910, 921 (2d Cir. 1987) ("A broad reading of the term 'established' . . . is more consistent with the legislative intent behind the governmental exemption."). Generally, a plan is established by a governmental entity when the entity itself is involved in arranging and obtaining the contract for the benefit of its employees. In contrast, a plan is not established by a governmental entity when a separate, non-governmental organization, such

13

as a labor union, contracts independently with an insurance provider on behalf of the intended beneficiaries. *See Graham v. Hartford Life & Acc. Ins. Co.*, 589 F.3d 1345, 1348 (10th Cir. 2009).

Notably, courts routinely find that a plan offered by a school district to its employees is a governmental plan because the plans are contracts created by the governmental entity for the benefit of the employees. *See, e.g.*, *Shirley v. Maxicare Texas, Inc.*, 921 F.2d 565, 567 (5th Cir. 1991) (citing several cases to support plaintiff's assertion that "Congress intended for plans established or maintained by public school districts to be exempt from ERISA"); *Berthelot v. Travelers Ins. Co.*, 973 F. Supp. 596, 600 (E.D. La. 1997) ("[B]ecause the plan consists of a contract between the Orleans Parish School Board and [Health Care of Louisiana], it is exempt from the constraints of ERISA"); *Brown v. Nw. Nat. Life Ins. Co.*, No. CIV.A. 87-2375, 1987 WL 18813, at *1 (E.D. La. Oct. 21, 1987) ("[S]chool district plans are governmental plans within the meaning of ERISA." (citing *Feinstein v. Lewis*, 477 F. Supp. 1256 (S.D.N.Y. 1979))).

Here, the plan was clearly established by the School Board. Plaintiff relies on *Graham v. Hartford Life & Accident Insurance Co.* to support the notion that a plan is not exempt if participation is voluntary and the plan is funded through payroll deductions. *See* 589 F.3d at 1348. However, this reliance is misplaced because the policy in *Graham* was obtained by a labor union on behalf of its members, not by the government employer. *Id.* at 1354. In contrast here, the School Board itself applied for and contracted with Defendant to provide disability insurance to its employees. Although participation was voluntary and funded by payroll deductions, the School Board directly solicited the plan and advertised its availability to its employees. Further, the School Board is the named policyholder. *See* R. Docs. 17-5 at 1, 17-7 at 2. Because establishment alone is sufficient to find that a particular plan is an exempt governmental plan, the Court declines to

consider whether the School Board "maintained" the plan. Because the policy is exempt from ERISA, Plaintiff is unable to state a claim for relief under the statute.

## III. CONCLUSION

For the foregoing reasons,

    **IT IS ORDERED** that Defendant's Motion for Summary Judgement, R. Doc. 16, is **GRANTED**.

    **IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, R. Doc. 17, is **GRANTED**, and Plaintiff's claims are dismissed **WITHOUT PREJUDICE.**[10]

    New Orleans, Louisiana on this 25th day of October, 2019.

                                        Eldon E. Fallon
                                   U.S. District Court Judge

---

[10] "The court's dismissal of a plaintiff's case because the plaintiff lacks subject matter jurisdiction is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Ramming*, 281 F.3d at 161.